CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
DEC 12 2012
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| DONALD L. HINES, | ) | CASE NO. 4:12CV00013 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's August 11, 2009 protectively-filed applications for a period of disability, disability insurance benefits, and supplemental security income under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423, and 1381, et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The question presented is whether the Commissioner's final decision is supported by substantial evidence. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter DENYING plaintiff's motion for summary judgment, GRANTING the Commissioner's motion for summary judgment, and DISMISSING this action from the docket of the court.

In a decision dated October 29, 2010, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since July 6, 2009, his alleged date of disability onset.[1] (R. 19-20.) The Law Judge determined plaintiff's cardiac disorder was a

---

[1] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Supplemental

severe impairment, but that his hypertension, hyperlipidemia, sleep apnea, and mental impairment were not severe impairments. (R. 21-22.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled any listed impairment. (R. 23-24.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform unskilled sedentary work which required a clean work environment and provided a sit/stand option.[2] (R. 24.)

Robert Jackson, a vocational expert ("VE"), was present at the hearing and responded to questions premised on the Law Judge's RFC finding. (R. 26-28, 52-54.) Based on those responses, the Law Judge determined that, while plaintiff was unable to perform his past relevant work as a pipefitter or cloth packer, he could perform the full range of unskilled, sedentary work available to him including those the VE identified such as a general production worker or material handler. (R. 26-28, 52-53.) Thus, the Law Judge found plaintiff not disabled under the Act.

Plaintiff appealed the Law Judge's October 29, 2010 decision to the Appeals Council. (R. 1-13.) In its February 15, 2012 decision, the Appeals Council found no basis to review the Law Judge's decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1.) This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir.

---

security income is payable the month following the month in which the application was filed. 20 C.F.R. § 416.335.

[2] Sedentary work is defined in 20 C.F.R. § 404.1567(a) as involving lifting no more than 10 pounds at a time with occasional lifting or carrying of objects such as files or small tools. A job in this category involves sitting, though a certain amount of walking or standing is often necessary.

2

1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642.

Plaintiff asserts that the Law Judge failed to properly assess his credibility, including his complaints of pain, and he contends the finding that he was capable of unskilled, sedentary work is not supported by substantial evidence. (Dkt. No. 11, at 4-6.)

Here, the Law Judge found that plaintiff's cardiac disorder was a severe impairment and that his medically determinable impairments reasonably could be expected to produce some of his alleged symptoms. (R. 20, 25.) However, he concluded that plaintiff's statements concerning the intensity, persistence, and limiting effects were not credible to the extent they were inconsistent with his assessment of plaintiff's RFC. (R. 25.) Plaintiff offers that the medical evidence of record actually corroborates his subjective complaints that his cardiac disorder produces significant functional limitations.

In reviewing a claimant's subjective allegations of the intensity and limiting effects of his condition, the Law Judge was entitled to consider all evidence of record, including the claimant's testimony, medical records, the claimant's daily activities, and the nature of his treatment. 20 C.F.R. § 404.1529(c). While a claimant need not provide objective evidence in support of his subjective allegations, the presence or absence of objective medical evidence is important in

3

determining whether plaintiff's allegations were credible. *Hines v. Barnhart*, 453 F.3d 559, 564-565 (4th Cir. 2006).

Here, the Law Judge pointed out that none of plaintiff's treating physicians revealed any functional restrictions or opined that he was as limited as he alleges. (R. 26.) The Law Judge noted further that plaintiff's treatment had been relatively limited and conservative, with significant gaps in follow-up visits and with instances of noncompliance with prescribed treatment.[3] (R. 25.) The Law Judge looked to plaintiff's daily activities and pointed out that plaintiff was able to drive an automobile (R. 26, 38, 169), reported no problems with personal care (R. 26, 167), and walked around outside every day, weather permitting (R. 26, 166.). While none of these factors, alone, would be sufficient to sustain a Law Judge's credibility determination, together they provide substantial evidentiary support for his ultimate decision to give less credit to plaintiff's subjective complaints.

Plaintiff alleges that his disability began on July 6, 2009, when he was admitted to Lynchburg General Hospital. Plaintiff had a history of heart problems beginning in June 2008, when he had an "inferior myocardial infraction, treated with a bare metal stent to the right coronary artery." (R. 242.) Following this incident, plaintiff was not compliant with his medications and was admitted to the hospital on July 6, 2009 complaining of no energy, shortness of breath, numbness in his legs and ankles, and chest pains, although there was no peripheral edema. (R. 274.) Plaintiff's echocardiogram showed ejection fraction of 35-45%. (R. 276.) Plaintiff also had a coronary angiography, left ventriculography, and right and left heart catheterization which revealed a patent bare metal stent, numerous luminal irregularities without

---

[3] Plaintiff did indicate that a nine-month gap in treatment was due to his loss of health insurance. (R. 47.) Inability to pay for services may excuse noncompliance with prescribed treatment. 20 C.F.R. §§ 404.1530, 416.930; *Nunley v. Barnhart*, 296 F. Supp. 2d 702, 704 (W.D.Va. 2003).

4

high grade obstruction, normal left main and circumflex, ramus intermedius with mild irregularities, LAD with mild irregularities, systemic hypotension due to hypovolemia, ischemic cardiomyopathy with severe LV dysfunction, and mild mitral regurgitation. (R. 272.) Laura Yount, M.D., opined that the cause of his symptoms was uncontrolled systolic heart failure due to his noncompliance, and she emphasized to the plaintiff the need for lifelong medication and smoking cessation. (R. 277.) He was restarted on medications including lisinopril, coreg, lasix, and pravachol, and instructed to follow-up with cardiology. (R. 278.)

On July 13, 2009, plaintiff went to CentraHealth Cardiovascular Group's ("Cardio Group") urgent clinic, where he complained of shortness of breath, dizziness, and leg pain. (R. 377.) His physical exam showed no clubbing, cyanosis, or edema, and the plaintiff reported no arm or thigh muscle pain, arm or thigh muscle weakness, shakiness, numbness, tingling, or weakness. (R. 378-379.) At this visit, his lisinopril was discontinued, and plaintiff was told that he could not return to his job as an electrical worker until further notice. (R. 380-381.)

On July 27, 2009, plaintiff reported back to the emergency room complaining of shortness of breath. An examination showed that he had normal chest excursion with respiration, normal ROM in all four extremities, no tenderness to palpation in his extremities, and his distal pulses were normal. (R. 312.) Winifred Agard, M.D., discharged plaintiff explaining that she "ha[d] not determined a specific etiology for patient's symptoms… but [she] ha[d] low suspicion for medical, surgical, or other life threatening illness." (R. 317.) Plaintiff followed up at the Cardio Group on July 30, 2009, continuing to complain of shortness of breath, dizziness, and generalized body aches. (R. 372.) His physical exam revealed no clubbing, cyanosis, or edema, and he had normal pulses in all four extremities. (R. 374.) The Cardio Group referred plaintiff for a CT scan for his dizziness, although no results of a CT scan appear in the record. (R. 375.)

5

Case 4:12-cv-00013-JLK-BWC   Document 14   Filed 12/12/12   Page 5 of 9   Pageid#: 487

Plaintiff reported back to the emergency room on August 21, 2009 complaining of a headache, dizziness, shortness of breath, and aches in joints. (R. 331.) At this time, his extremities were non-tender with a normal range of motion and no pedal edema or calf tenderness. (R. 334.) Plaintiff was diagnosed with a viral syndrome (cold) and discharged. (R. 345.)

At his Cardio Group follow-up on September 9, 2009, the plaintiff reported shortness of breath and weakness, but he did not complain of any pain in his extremities, and his exam showed no clubbing, cyanosis, or edema. (R. 364, 366.) On October 1, 2009, the plaintiff reported no change in his symptoms, and there continued to be no cyanosis, clubbing, or edema in his extremities. (R. 356, 358.) On October 23, 2009, the plaintiff stated that he was gaining weight and had slight lower extremity swelling, but no chest pain, dizziness, syncope, or near-syncope. (R. 417.) An exam revealed no clubbing, cyanosis, or edema and normal pulses in all four extremities, but his lasix prescription was doubled for the next two-four days.[4] (R. 419-420.) At his follow-up on November 18, 2009, plaintiff continued to complain of shortness of breath and reported swelling in his feet in the mornings. (R. 410.) Examination again showed no clubbing, cyanosis, or edema and normal pulses. (R. 412.) On December 22, 2009, plaintiff continued to report shortness of breath and swelling in his feet in the mornings, although the exam showed no clubbing, cyanosis, or edema in his extremities. (R. 403, 405.) Thomas Nygaard, M.D., plaintiff's primary cardiologist, stated that the plaintiff "has had improvement in his ventricular function on medical therapy," but that he remains quite symptomatic. (R. 406.) Plaintiff's lisinopril and lasix prescriptions were increased, and he was instructed to return in six to eight weeks. (R. 406.)

---

[4] Lasix is a diuretic used to treat fluid retention and high blood pressure.

Case 4:12-cv-00013-JLK-BWC Document 14 Filed 12/12/12 Page 6 of 9 Pageid#: 488

The plaintiff then stopped going to the Cardio Group because he lost his health insurance. (R. 47.) He paid for his medication out of pocket until he began receiving Medicaid. (R. 48.) At his follow-up with the Cardio Group on September 28, 2010, plaintiff reported increased shortness of breath and swelling in his hands and ankles at times. (R. 427.) However, his exam showed no clubbing, cyanosis, or edema and pulses were normal in all four extremities. Dr. Nygaard stated that he was pleased overall with how the plaintiff was doing, and the doctor refilled the plaintiff's medications and scheduled a follow-up for six months later. (R. 430.)

Plaintiff has alleged disabling edema, but the Law Judge pointed out that none of plaintiff's treating physicians found signs of edema. (R. 25.) Plaintiff alleged that he became unable to work in July 2009, but he did not report that he had any swelling in his hands until September 28, 2010. (R. 17, 427.) Prior to this visit, there is no evidence in the record revealing that plaintiff ever claimed or was found to have experienced swelling in his hands. In July 2009, plaintiff did not indicate that he had swelling in his hands and was found to have no edema in his extremities.[5] (R. 274-275, 374.) In an August 2009 emergency room visit, there was no sign of edema on the plaintiff's extremities. (R. 334.) During his follow-up visits in September through December 2009, plaintiff did not report any swelling in his hands, and the physician's record states there was no edema in the plaintiff's extremities. (R. 358, 366, 405.)

Additional evidence shows that plaintiff did not seek any medical treatment from December 2009 through September of 2010, and, therefore, there is no medical evidence to corroborate plaintiff's alleged symptoms during this period. (R. 25.) At plaintiff's September 28, 2010 cardiovascular follow-up, he claimed to have swelling in his hands at times, but the record of this visit shows that there still was no edema in his extremities. (R. 427, 429.) The

---

[5] Plaintiff claimed throughout the relevant period to have swelling in his ankles, but no evidence of edema was ever recorded. The Law Judge allowed for a sit/stand option to accommodate this possible limitation. (R. 24-25.)

7

doctor made no changes to his medications and simply scheduled him for another appointment in six months. (R. 430.) All this provides substantial evidentiary support for the Law Judge's findings regarding the extent, intensity, and effects of plaintiff's alleged pain as well as his credibility as a whole.

Plaintiff asserts that the Law Judge erred in finding that he was capable of performing unskilled, sedentary work because he believes that this finding conflicts with the testimony of the Vocational Expert (VE). At the hearing on October 6, 2010, the VE testified that there were a substantial number of unskilled, sedentary jobs which could be performed by a person with plaintiff's limitations so long as the employee worked in a clean environment with a sit/stand option. (R.52-53.) In response to a question from plaintiff's counsel, the VE clarified that these jobs required good use of both upper extremities. (R. 53-54.) In his decision, the Law Judge specifically addressed whether these jobs would be available if the plaintiff had difficulty gripping and grasping with both hands. (R. 27.) Because the Law Judge's finding that plaintiff's complaints about swelling in his hands were not credible is supported by the evidence, then his rejection of any hypothetical premised on swelling in plaintiff's hands likewise has substantial evidentiary support. (R. 27-28.)

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment and DENYING plaintiff's motion.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become

conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

12/12/12
Date

9